Gould v State of New York (2025 NY Slip Op 25283)

[*1]

Gould v State of New York

2025 NY Slip Op 25283

Decided on July 11, 2025

Court Of Claims

Chaudhry, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 11, 2025
Court of Claims

Gregory R. Gould, Claimant,

againstThe State of New York, Defendant.
BROOK ROWLEY, Claimant,
againstTHE STATE OF NEW YORK, Defendant.
BRIAN GIRARD, Claimant,
againstTHE STATE OF NEW YORK, Defendant.
ADAM LECKONBY, Claimant,
againstTHE STATE OF NEW YORK, Defendant.

Claim No. 135530

For Claimants:
HARDING MAZZOTTI, LLP
By: Melanie J. Lazarus, Esq. and Kelly A. Magnuson, Esq.
For Defendant:
LETITIA JAMES, New York State Attorney General
By: C. Harris Dague, Assistant Attorney General

Zainab A. Chaudhry, J.

The ultimate issue in these four actions is whether the New York State Division of Homeland Security and Emergency Services (DHSES) violated the Federal Fair Labor Standards Act (FLSA) by failing to pay its K-9 handlers overtime pay for time the employees spent outside of work hours caring for their assigned dogs. Claimants Brian Girard, Gregory Gould, Adam Leckonby, and Brook Rowley are K-9 handlers employed by DHSES who commenced these actions against defendant the State of New York seeking damages for such alleged FLSA violations.[FN1]
Each claimant separately moves for partial summary judgment as to liability pursuant to CPLR 3212, and defendant cross-moves to dismiss each of the claims under CPLR 3211 (a) (2) for lack of subject matter jurisdiction.
As discussed in more detail below, all but one of the claims survives the threshold jurisdictional challenge. And although this Court agrees with other courts that have considered the issue and concluded that the significant off-duty time spent by K-9 handlers caring for and training their partners is compensable as work under the FLSA, material questions of fact preclude judgment as a matter of law regarding the State's liability here. Thus, for the reasons that follow, the Court (1) denies claimants' motions for partial summary judgment, (2) grants defendant's cross-motion to dismiss Rowley's claim as jurisdictionally defective, and (3) denies defendant's cross-motions to dismiss the claims of Girard, Gould, and Leckonby.THE FAIR LABOR STANDARDS ACTThe FLSA is a remedial statute designed to "protect all covered workers from substandard wages and oppressive working hours" (Barrentine v Arkansas-Best Freight System, Inc., 450 US 728, 739 [1981]; see 29 USC § 202 [a]; Tennessee Coal, Iron & R. Co. v Muscoda Local No. 123, 321 US 590, 597 [1944]). As relevant here, under the FLSA, an employer [*2]generally must pay employees time and a half for any hours worked beyond 40 hours per week (see 29 USC § 207 [a] [1]; Reich v State of New York, 3 F3d 581, 587 [2d Cir 1993], cert denied 510 US 1163 [1994]). The statute applies to individuals employed by the State (see 29 USC § 203 [e] [2] [C]; Brock v City of Cincinnati, 236 F3d 793, 796 [6th Cir 2001], citing Garcia v San Antonio Metropolitan Transit Authority, 469 US 528 [1985]).
The FLSA defines "[e]mploy" to "include[ ] to suffer or permit to work" (29 USC § 203 [g]). The statute does not, however, expound further on what constitutes compensable work (see Reich v New York City Tr. Auth., 45 F3d 646, 649 [2d Cir 1995]). The Supreme Court has clarified that "work or employment" means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and [their] business" (Tennessee Coal, 321 US at 598; see Holzapfel v Town of Newburgh, NY, 145 F3d 516, 522 [2d Cir 1998], cert denied 525 US 1055 [1998]). Compensable work is not bounded by the strictures of a predetermined workday. Instead, "employees must be compensated for 'activities performed either before or after the regular work shift . . . if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed' " (Holzapfel, 145 F3d at 522, quoting Steiner v Mitchell, 350 US 247, 256 [1956]; see Reich, 45 F3d at 651). Still, if work is to be compensable, the employer must actually or constructively know that the employee is engaging in such work (see Holzapfel, 145 F3d at 524). Once the employer "knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours" (id.). "In short, what qualifies as compensable work under the FLSA is determined by whether the employee's activity is controlled or required by the employer, is necessarily and primarily for the benefit of the employer, and is an integral and indispensable part of the job" (id. at 528). 
There are exceptions to the FLSA's general rules, however. Under the "de minimis work doctrine," work beyond an employee's regularly scheduled hours that is "negligible"—for example, a few additional seconds or minutes—need not be compensated (Brock, 236 F3d at 804, citing Anderson v Mt. Clemens Pottery Co., 328 US 680, 692 [1946]; see Reich, 45 F3d at 652). Only when employees are " 'required to give up a substantial measure of [their] time and effort' " is compensable working time involved (Brock, 236 F3d at 804, quoting Anderson, 328 US at 692).
FACTS AND PROCEDURAL HISTORY
In approximately 2004, DHSES started an Urban Search and Rescue program (the USAR program). Through the USAR program, DHSES's Office of Fire Prevention and Control (OFPC) engages in "live victim searches or disaster searches through the use of highly trained" dogs known as "K-9s" (Behrens Affirm [4-17-24], ¶ 8). The dogs used in the program are trained primarily to "search wreckage after events such as natural disasters or building collapses of other origins and either locate any live people in the rubble and alert for them to be rescued or to determine that no living people remain inside" (Girard Affid [3-24-23], ¶ 26). They may also conduct "wide-area searches for missing persons" (Behrens Affirm, ¶ 9; see Girard Affid, ¶ 36). After being selected for the voluntary and highly competitive USAR program, DHSES employees must "undertake rigorous training before and after they are paired with a K-9 partner" (Behrens Affirm, ¶ 11). The dogs are state assets, but DHSES expects their handlers to care for them 24 hours per day, every day of the year, for as long as the dog lives (see Girard Affid, ¶ 44). Indeed, DHSES does not have kennels for the dogs and, thus, when the handler is not [*3]working, the dogs live with the handlers in their homes.
Claimants are current DHSES employees who were selected to be K-9 handlers in the USAR program. They allege that defendant violated the FLSA by failing to pay them overtime for their off-duty work caring for their dogs, which included, among other tasks, feeding, training, grooming, exercising, and picking up after the dogs. Claimants maintain that these tasks required them to work 9 or more hours per week over their usual, compensated work hours. They seek continuing damages, alleging that the FLSA violations are ongoing.
Following discovery, claimants separately moved pursuant to CPLR 3212 for partial summary judgment. Claimants argue that the time they spent "caring for and maintaining" their K-9 partners is "compensable time" under the FLSA (Cls' Mems of Law in Supp [3-27-23], at 5). More specifically, claimants contend that they are entitled to judgment as a matter of law as to liability because they have "presented indisputable facts that" (1) they are state employees, (2) they are "eligible for overtime . . . pay under the FLSA," (3) they "performed off-duty work indispensable to" their jobs and for defendant's benefit, but were not paid for such work, and (4) defendant "was aware of this work and required [them] to perform it" (id. at 11-12). Claimants further maintain that defendant "does not dispute" that they were "required to spend off-duty time caring" for their K-9 partners (id. at 9).
In support of their motions, claimants submitted evidence demonstrating that they are responsible for their dogs' care both on days that claimants work and on their days off. Even on their workdays, claimants must care for their dogs before and after their shifts (see Girard Affid, ¶¶ 41, 44, 61, 64; Gould Affid [3-23-23], ¶¶ 46, 61, 63, 64; Leckonby Affid [3-24-23], ¶¶ 41, 69; Rowley Affid [3-24-23], ¶¶ 41, 61). Claimants reiterated that they must feed, walk, exercise, groom, and clean up after their dogs both while claimants are at work and outside of their scheduled shifts. They also continuously reinforce their dogs' training, including at times that are not within claimants' work hours (see Girard Affid, ¶ 54; Gould Affid, ¶ 54; Leckonby Affid, ¶ 48; Rowley Affid, ¶ 49). When claimants and their dogs are "not actively engaged in something necessary for" their "care, training, or well-being," the dogs are in a kennel (Girard Affid, ¶ 48; see Gould Affid, ¶ 48; Leckonby Affid, ¶ 43; Rowley Affid, ¶ 43). If the dogs are out of their kennels, they must be supervised and "remain under [claimants'] command" (Girard Affid, ¶ 56; see Gould Affid, ¶ 55; Leckonby Affid, ¶ 49; Rowley Affid, ¶ 51).
Claimants averred that they "have not been paid for" these responsibilities "in accord with [their] hourly rate of pay or overtime premium when they do not occur during what the [S]tate considers [their] work day" (Girard Affid, ¶ 71; see Gould Affid, ¶ 69; Leckonby Affid, ¶ 65; Rowley Affid, ¶ 68; Girard EBT Trans [1-26-22], at 25). They have "never been paid at a higher hourly rate" because of their work as K-9 handlers (Girard Affid, ¶ 74; see Gould Affid, ¶ 74; Leckonby Affid, ¶ 68; Rowley Affid, ¶ 71). Girard, Leckonby, and Rowley estimated that, on average, they spent 10 off-duty hours per week caring for their K-9s (see Girard EBT Trans, at 31-32; Leckonby EBT Trans [1-26-22], at 64-66; Rowley EBT Trans [1-26-22], at 37-38). Gould estimated that he spent 9 to 15 off-duty hours per week caring for his dog (see Gould EBT Trans [1-26-22], at 71-72).
In further support of their motions, claimants also rely on DHSES's own records to demonstrate that the agency understood that its K-9 handlers were required to care for their dogs during non-work hours. A document distributed to prospective K-9 handlers outlined the "Minimum Time Commitments" for a USAR program K-9 handler (K-9 Handler Selection SOG Appdx 1 [6-8-20], Lazarus Affirm [Girard] [3-27-23], Exh I). The document made clear that [*4]handlers would need to make a "[p]ersonal [t]ime commitment" of "[a]pproximately 2-4 hours" on their days off and "[w]eekends to reinforce obedience, build relationship, [and] utilize training methods to expend energy (in addition to regular daily care)" (id.). The document explained that handlers would need to engage in "extra vacuuming and clean-up" of their homes and personal vehicles, along with picking up dog waste (id.). Further, the handlers would be required to exercise the dogs at "work or home, multiple times a week depending on the season" (id.). A second document states that K-9 handler "[c]andidates should understand that [their] commitment does not stop when work hours end. The care of a [K-9] partner is a 24/7 commitment to a living being" (NYS OFPC Live Victim Search K-9 Handler Selection [6-8-20], Lazarus Affirm [Girard], Exh I; see also McGovern EBT Trans [5-10-22], at 36; Cable EBT Trans [5-24-22], at 100; Howard EBT Trans [8-2-22], at 37-38).
Certain DHSES managerial employees agreed that claimants should be compensated for the time they spend off-duty caring for their dogs. William McGovern, Jr., a Fire Protection Specialist 3 in charge of OFPC's Investigation Branch and a former K-9 handler, stated that handlers should be "paid overtime for . . . work outside of . . . work hours" (McGovern EBT Trans, at 94). James Cable, the State Fire Administrator, said that "K-9 handlers should be paid for the off-duty care that they provide" (Cable EBT Trans, at 117). Stephen Kurtelawicz, a Fire Protection Specialist 3 in charge of the Special Operations Branch, concurred that K-9 handlers "should be paid for the time that they work" caring for their dogs when they are off duty (Kurtelawicz EBT Trans [5-24-22], at 53).
Defendant opposes claimant's motions and cross-moves to dismiss the claims pursuant to CPLR 3211 (a) (2). As to its cross-motion, defendant argues that this Court lacks subject matter jurisdiction to adjudicate these actions for three independent reasons. First, defendant asserts that the claims fail to satisfy the pleading requirements of Court of Claims Act (CCA) § 11 (b) because they do not "enumerate or allege sufficient details regarding the nature of their claims and damages" (Def's Combined Mem of Law [4-19-24], at 2; see id. at 11). Second, defendant argues that the claims "raise issues of agency policy and decision-making that must be brought" via a CPLR article 78 proceeding (id. at 2; see id. at 14). Third, defendant argues that the "claims must be exhausted" under the grievance provisions of the parties' Collective Bargaining Agreement (CBA) (id. at 17).[FN2]
Claimants oppose defendant's cross-motions to dismiss.[FN3]

Alternatively, defendant urges that claimants' motions for partial summary judgment should be denied because triable issues of fact exist "regarding compensable time and rates" (id. at 3; see id. at 19). In opposition to claimants' motions, defendant submitted evidence, including an affirmation of Renée Behrens, an Associate Counsel employed by DHSES. Behrens averred that, in addition to their salaries, claimants now "receive an additional stipend annually" (Behrens Affirm, ¶ 15). The stipend stems from a "negotiated memorandum of understanding (MOU) exclusively for K-9 handlers that was collectively bargained for and agreed upon" by the Governor's Office of Employee Relations, DHSES, and the Public Employees Federation, which represents each of the claimants here (id.). The June 2021 MOU states that K-9 handlers "shall be paid a stipend at the annual rate of $5,500 for time spent for in-service care of DHSES assigned canines outside of regular working hours" (MOU [6-17-21], ¶ 1, Behrens Affirm, Exh A). This stipend "represents a negotiated agreement of 6 hours per pay period in time spent caring for DHSES K-9s outside of regular working hours—or 3 hours per week—at a rate of pay equal to job rate scale for" claimants' civil service grade (Behrens Affirm, ¶ 25 [emphasis omitted]). As explained in the deposition testimony of the State Fire Administrator, the stipend "was intended to provide an average recognition of the minimum care that was required after hours" (Cable EBT Trans, at 123).
The MOU explains that its "negotiated stipend shall be the sole source of compensation received by employees for time spent caring for DHSES canines outside of regular working hours" (MOU, ¶ 1). The stipend "applied prospectively commencing on October 29th, 2020" and "retroactively commencing on October 28, 2020" (id. [emphasis omitted]). The retroactive payments "relate[d] back a period of 36 months for eligible employees" (id.). DHSES was not "required to make any retroactive payment pursuant to [the] MOU to any employee who has a pending legal claim seeking compensation for past canine care" (id.). Having commenced these claims before the MOU was executed, claimants were not entitled to retroactive payments. The MOU made clear, however, that claimants maintained their "right to pursue their pending claim[s] for past canine care" (id.). In addition, the MOU provided that DHSES "shall continue to pay for reasonable and necessary food, veterinary bills[,] and grooming expenses associated with care of in-service DHSES canines" (id. ¶ 5). The MOU was set to expire on "March 31, 2023 unless extended by mutual agreement of the parties" (id. ¶ 7). Although the summary judgment record does not contain confirmation of any such extension of the agreement, according to defendant, as of April 2024, claimants continued to "receive the prospective stipends for the pendency of their service as a K-9 handler" (Behrens Affirm, ¶ 24).
ANALYSIS
The Court turns first to defendant's cross-motions to dismiss inasmuch as they implicate the subject matter jurisdiction of this Court.
I. CCA § 11 (b) Conditions the State's Wavier of Sovereign Immunity
It is well established that "[t]he State's waiver of immunity from suits for money damages is not absolute, but rather is contingent upon a claimant's compliance with specific conditions placed on the waiver by the Legislature" (Lepkowski v State of New York, 1 NY3d 201, 206 [2003]). In addition to the numerous procedural requirements of the Court of Claims Act, as relevant here, CCA § 11 (b) places several substantive conditions upon the State's waiver of sovereign immunity by requiring a claim to specify "the time when and place where such claim arose, the nature of same, the items of damage or injuries claimed to have been sustained" and, in a case like this, "the total sum claimed" (CCA § 11 [b]; see also Lepkowski, 1 NY3d at 207; Wright v State of New York, — NY3d &mdash, &mdash, 2025 NY Slip Op 01564, *3 [2025]).
Further, the "statutory requirements conditioning suit must be strictly construed," and a claimant's failure to satisfy any one of them constitutes a jurisdictional defect requiring dismissal of the claim (Kolnacki v State of New York, 8 NY3d 277, 280 [2007] [internal quotation marks omitted]). The CCA "does not require the State to ferret out or assemble information that section 11 (b) obligates the claimant to allege," even if the State could "easily ascertain" such information "from its . . . records" (Lepkowski, 1 NY3d at 208; see Kolnacki, 8 NY3d at 280; see also Wright, 2025 NY Slip Op 01564, *3). Indeed, even where substantial discovery has occurred in a particular matter, "[l]ack of prejudice to the State is immaterial and a court is without power to dispense with [the] applicable jurisdictional requirements . . . based upon its own concepts of justice" (Matter of DeMairo v State of New York, 172 AD3d 856, 857 [2d Dept 2019]).
A. Rowley's Claim is Jurisdictionally Defective
Strictly construing CCA § 11 (b)'s requirements, as the Court must, Rowley has failed to articulate the "time when" her claim accrued with the necessary particularity. Rowley's claim first alleges that she became a K-9 handler in the USAR program on January 26, 2018 (see Rowley Claim, ¶ 2). However, Rowley then inconsistently pleads that her "claim accrued" nearly six years earlier "on February 2012 and continues each and every day" (id., ¶ 4). It is not clear how Rowley's claim could have accrued in February 2012 when she pleads that she did not become a dog handler until many years later in 2018. The irreconcilable allegations on the face of Rowley's claim render it jurisdictionally deficient because they require defendant to search its employment records to ascertain the time when Rowley's claim arose—the exact information that section 11 (b) says shall be stated in the claim (see Lepkowski, 1 NY3d at 208; see also Riefler v State of New York, 228 AD2d 1000, 1001 [3d Dept 1996] [claim failed to satisfy section 11 (b)'s "place where" requirement because it contained contradictory allegations about the location of the accident]; Emma T. v State of New York, 77 Misc 3d 858, 866 [Ct Cl 2022] [Vargas, J.] [noting that "(i)nconsistency with respect to the time when the claim arose is a clear departure from the requirements" of section 11 (b)]). And this pleading defect is not cured even if the State was ultimately able to determine the correct date from its own records (see Lepkowski, 1 NY3d at 208; Sacher v State of New York, 211 AD3d 867, 875 [2d Dept 2022]).
Defendant's cross-motion to dismiss Rowley's claim thus must be granted, and Rowley's motion for partial summary judgment is denied as academic.
B. The Claims of Girard, Gould, and Leckonby Satisfy CCA § 11 (b)
In contrast to Rowley's claim, the claims filed by Girard, Gould, and Leckonby survive section 11 (b) scrutiny. Although the allegations pleaded by Girard, Gould, and Leckonby are generic and boilerplate in many respects, they are sufficiently particularized with respect to each [*5]of section 11 (b)'s substantive pleading requirements.
Lepkowski is particularly instructive in analyzing the sufficiency of these three claims because it involved the FLSA. The claimants in Lepkowski, numbering in the hundreds, were state employees who alleged that they "worked over 40 hours in unspecified work weeks from July 1992" to the date of filing, seeking compensation for "unpaid overtime" under the FLSA (1 NY3d at 203-204). Although the Lepkowski Court noted that the claimants there had "fulfilled section 11 (b)'s requirement to specify the nature of the claim," they did not "identify where the claims arose, itemize damages or indicate the total sum sought" (id. at 204, 207 [internal quotation marks and brackets omitted]). The Court of Appeals thus held that the claims were "jurisdictionally defective for nonconformity with section 11 (b)'s substantive pleading requirements" (id. at 209).
Here, as in Lepkowski, claimants Girard, Gould, and Leckonby satisfied section 11 (b)'s nature-of-claim requirement. They pleaded that they (1) are DHSES employees, (2) "had worked overtime" during each week that they were employed as K-9 handlers, (3) were "required to be paid overtime compensation pursuant to the FLSA," and (4) were "not paid this overtime compensation" (id. at 207). For instance, Girard alleged that he is a DHSES employee and had worked "in excess of" 40 hours "each week" (Girard Claim, ¶ 2). He provided his job title and hourly wage. According to Girard, he was obligated to house his K-9 partner at his home and to care for the dog pursuant to an agreement or understanding with DHSES. His address is noted in the claim. He also asserts that he engaged in 10 hours of additional work per week during the relevant period for the dog's care and maintenance—including purchasing supplies; taking the dog to the vet or performing other medical care; and feeding, bathing, grooming, walking, training, exercising, and cleaning up after the dog. Despite Girard's extra work, defendant "failed to pay" him "overtime for time spent off-duty caring for his K-9 . . . partner per the" FLSA (id.). Gould and Leckonby made similar allegations.
Unlike the claimants in Lepkowski, however, claimants Girard, Gould, and Leckonby also met section 11 (b)'s other requirements. Tying the accrual dates to when they initially were assigned to be K-9 handlers, Girard, Gould, and Leckonby alleged the time when their claims arose: on May 15, 2016, in February 2012, and on January 26, 2018, respectively (see Girard Claim, ¶¶ 2, 4; see Gould Claim, ¶¶ 1, 3; Leckonby Claim, ¶¶ 2, 4). They maintained that the claims "continue[ ] each and every day" (Girard Claim, ¶ 4; see Gould Claim, ¶ 3; Leckonby Claim, ¶ 4). Further, each of these claimants stated that the place where the claim arose was their "home[s] and other locations during all non-work day hours" (Girard Claim, ¶ 3; see Gould Claim, ¶ 2; Leckonby Claim, ¶ 3). The claims also set forth the damages sustained and the total sums claimed. Although they broadly stated that caring for their K-9s is a responsibility that exists 7 days per week and 365 days per year, Girard, Gould, and Leckonby each specified that their damages were "[u]npaid wages for an additional 10 hours a week for care and maintenance" of their dogs "outside normal work hours" (Girard Claim, ¶ 5; see Gould Claim, ¶ 4; Leckonby Claim, ¶ 5). Girard and Gould further alleged that defendant failed to reimburse them for additional "expenses of transporting the K-9 partners in their own vehicles" (Girard Claim, ¶ 2; see Gould Claim, ¶ 1). Girard demanded total sums of at least $200,000; Gould demanded at least $350,000; and Leckonby demanded at least $65,100.
In light of the specific guidance provided by Lepkowski for FLSA claims, as well as the nature of the claims at issue, the allegations of Girard, Gould, and Leckonby were sufficient under CCA § 11 (b)—especially considering that the statute "does not require absolute [*6]exactness" in pleading or the identification of specific evidentiary facts (Young v State of New York, 223 AD3d 985, 985 [3d Dept 2024] [internal quotation marks omitted]). The allegations here thus met the threshold that the Court of Appeals established for FLSA claims against the State and provided enough information to permit defendant to investigate and determine its liability (see Lepkowski, 1 NY3d at 207-209; see also Carbone v State of New York, UID No. 2001-015-177 [Ct Cl, Sept. 14, 2001] [Collins, J.] [declining to dismiss an FLSA claim under section 11 (b)]; Fauss v State of New York, Ct Cl, Oct. 6, 2020, Hard, J., Claim No. 132396, at 4 [same]).
Accordingly, the Court denies so much of defendant's cross-motions seeking to dismiss the claims of Girard, Gould, and Leckonby on section 11 (b) grounds.
II. Claimants Were Not Required to Proceed Via CPLR Article 78
When "a party seeks only money damages against the State," the Court of Claims is the proper forum for such a claim (Matter of Gross v Perales, 72 NY2d 231, 235 [1988]). Indeed, "the Court of Claims has exclusive jurisdiction over actions for money damages against the State" (Bertoldi v State of New York, 275 AD2d 227, 228 [1st Dept 2000], appeal dismissed 95 NY2d 958 [2000], lv denied 96 NY2d 706 [2001]; see CCA §§ 8, 9; Matter of Gross, 72 NY2d at 235). In contrast, a challenge to the determination of an administrative agency on the ground that it was arbitrary and capricious is governed exclusively by CPLR article 78 proceedings commenced in Supreme Court (see CPLR 7803 [3]; Matter of Gross, 72 NY2d at 235). Notably, in an article 78 proceeding, "[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought" (CPLR 7806; see Matter of Gross, 72 NY2d at 235). Thus, determining whether the Court of Claims or Supreme Court has subject matter jurisdiction turns on "[w]hether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim" (Matter of Gross, 72 NY2d at 236; see Piraino v State of New York, 231 AD3d 1457, 1458 [3d Dept 2024]; Hoffman v State of New York, 42 AD3d 641, 642 [3d Dept 2007]). This question "is dependent upon the facts and issues presented in a particular case" (Matter of Gross, 72 NY2d at 236).
Here, contrary to defendant's argument (see Def's Combined Mem of Law, at 2, 15), claimants are not challenging any general DHSES administrative policy regarding K-9 handler compensation or overtime as arbitrary or capricious while seeking only incidental monetary relief. Rather, the essential question presented is whether claimants are entitled to money damages because of defendant's alleged violations of the FLSA. Indeed, as claimants note, defendant has not even identified a general administrative policy or any determination specific to these individual claimants that existed at the time the claims were filed. Thus, claimants were not required to proceed by way of article 78 proceedings in Supreme Court, but properly commenced their claims in this Court (see Fauss, Claim No. 132396, at 5-6 ["review of an administrative determination is unnecessary to the resolution of (an) FLSA claim" (internal quotation marks omitted)]). Indeed, defendant fails to identify any Court of Claims decision that has declined to exercise jurisdiction over " 'a claim for money damages arising out of alleged violations of the [FLSA]' " in favor of an article 78 proceeding (id. at 5, quoting Carbone, UID No. 2001-015-177; see also Anand v State of New York, UID No. 2015-015-040 [Ct Cl, Jan. 21, 2015] [Collins, J.]; Gorski v State of New York, 23 Misc 3d 327 [Ct Cl, 2008] [DeBow, J]; see generally Alston v State of New York, 97 NY2d 159 [2001]; Bergmann v State of New York, 281 [*7]AD2d 731 [3d Dept 2001]).
Accordingly, defendant's cross-motions to dismiss the claims of Girard, Gould, and Leckonby on this ground are denied.
III. Claimants Were Not Required to Exhaust Their Contractual Remedies
Defendant's argument that claimants were required to exhaust the relevant contractual grievance procedures before commencing these claims is also rejected. As an initial matter, defendant fails to specify the precise source of the contractual grievance procedures claimants purportedly had to follow and exhaust. The Court notes that the MOU contains no such procedures and defendant did not provide a copy of any underlying CBA.
In any event, as the Supreme Court of the United States has explained, "the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive" the compensation to which they are entitled (Barrentine, 450 US at 739 [emphasis omitted]). As such, the Court went on to hold that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate" (id. at 740 [internal quotation marks omitted]; see Glatt v Fox Searchlight Pictures, Inc., 811 F3d 528, 534 [2d Cir 2016]). Indeed, "FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement" (Barrentine, 450 US at 740-741). Thus, an individual employee is not limited to pursuing a union grievance "where the employee's claim is based on rights arising out of" the FLSA (id. at 737). This conclusion accords with Court of Claims decisions on point (see Alshami v State of New York, UID No. 2024-064-005, at 10 [Ct Cl, July 19, 2024] [Vargas, J.] [because the claims at issue "were brought specifically for damages resulting in alleged FLSA violations," the claimants were not limited to grievances under their CBA but were "entitled to separately pursue any perceived violations of that Act"]; Fauss, Claim No. 132396, at 6 ["The filing of contract grievances pursuant to" a CBA has "not been required in other claims seeking overtime compensation brought in this Court"]).
Accordingly, the Court denies so much of defendant's cross-motions seeking to dismiss the claims of Girard, Gould, and Leckonby on this ground.
IV. Fact Issues Exist Rendering Partial Summary Judgment Inappropriate
The claims of Girard, Gould, and Leckonby having survived defendant's cross-motions to dismiss, the Court now turns to their motions for partial summary judgment on liability.
Summary judgment is a "drastic remedy" and may be granted only when no triable issues of fact exist (Andre v Pomeroy, 35 NY2d 361, 364 [1974]; see CPLR 3212). The moving party must initially establish the right to judgment as a matter of law by "tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Xiang Fu He v Troon Mgt., Inc., 34 NY3d 167, 175 [2019] [internal quotation marks omitted]), by proof "in admissible form" (Zuckerman v City of New York, 49 NY2d 557, 562 [1980] [internal quotation marks omitted]). The failure to make the initial prima facie showing "requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). If, however, the moving party makes such a showing, "the burden shifts to the nonmoving party 'to establish the existence of [*8]material issues of fact which require a trial of the action,' " also by admissible evidence (Xiang Fu He, 34 NY3d at 175, quoting Vega, 18 NY3d at 503). In determining a motion for summary judgment, "the evidence must be viewed in the light most favorable to the party opposing the motion" (Westinghouse Elec. Supply Co. v Brosseau & Co., 156 AD2d 851, 853 [3d Dept 1989]; see also Bill Birds, Inc. v Stein Law Firm, P.C., 35 NY3d 173, 179 [2020]; Vega, 18 NY3d at 503), and " 'every available inference must be drawn in the [non-moving party's] favor' " (Matter of Eighth Jud. Dist. Asbestos Litig., 33 NY3d 488, 496 [2019] [alteration in original], quoting De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]).
On several occasions, federal courts have examined how the FLSA applies to a dog handler assigned to a K-9 unit. These courts have made clear that " 'walking, feeding, training, grooming[,] and cleaning up are integral and indispensable parts of the handler's principal activities and are compensable as work' " (Holzapfel, 145 F3d at 522, quoting Reich, 45 F3d at 651; see Brock, 236 F3d at 804 [concluding that "at least some of the plaintiffs' dog-care efforts amount to FLSA 'work' "]; Hellmers v Town of Vestal, NY, 969 F Supp 837, 842 [ND NY 1997] [in general, "time spent by a police officer caring for or training (their) assigned police dog during that officer's off-duty hours constitutes compensable work time"]). These activities "are indispensable to the dogs' well-being and to the employer's use of the dogs in its business" (Reich, 45 F3d at 650). In other words, the time spent by handlers caring for their K-9 partners after hours is a compensable principal activity for which they are entitled to overtime "unless the time devoted to a particular task is de minimis" (Holzapfel, 145 F3d at 522 [internal quotation marks omitted]; see Reich, 45 F3d at 653).
On the other hand, the federal courts have also noted that, "[a]t some point, a[ handler's] attention to [their] assigned dog may not be provided primarily for the employer's benefit but rather out of the caretaker's own sense of love and devotion to the animal in [their] charge" (Holzapfel, 145 F3d at 523). Concerned about costs that could "ultimately lead to the demise of K-9 officer programs," the Second Circuit has reiterated that "compensable work" is that which is "required by the employer or principally for its benefit" (id. at 523-524; see id. at 526). Thus, whether a K-9 handler "engaged in such 'work' and how much compensable time [they] spent on those compensable activities [are] questions of fact for the" factfinder (id. at 522). This determination requires a critical "application of the definition of work" (id.) and, significantly, the Second Circuit has rejected the notion that "handlers must be compensated around the clock, waking and sleeping, because certain obligations are always present" (Reich, 45 F3d at 651). As that Court has noted, "[t]he mere presence of a dog does not" satisfy "the statutory concept of compensable work" (id. at 652).
Here, claimants Girard, Gould, and Leckonby have established a prima facie case under the FLSA. These claimants demonstrated through admissible proof that they walk, feed, train, groom, and clean up after their dogs outside of their work hours and that such activities exceed the de minimis threshold. In fact, DHSES's own documents and the deposition testimony of its managerial staff show that the agency knew that its K-9 handlers, including these claimants, worked for significant periods outside of their usual shifts to care for the dogs, train them, bond with them, and exercise them (see Holzapfel, 145 F3d at 525 [relying on a manager's knowledge of unpaid overtime]). Claimants further established that they have not been compensated for the time that they have spent engaged in these activities outside of their usual work hours—at least prior to October 29, 2020, the effective date of the MOU's prospective annual stipend concerning K-9 overtime pay.
Despite claimants' prima facie showing, defendant's submissions in opposition to claimants' summary judgment motions—namely, the MOU and the Behrens affirmation—create questions of material fact that require denial of the motions. As set forth above, the MOU contemplates that Girard, Gould, and Leckonby would receive an annual stipend, beginning on October 29, 2020, and continuing until at least March 31, 2023, when the MOU was set to expire unless extended. In her affirmation, Behrens stated that claimants "did—and still do—receive the prospective stipends for the pendency of their service as a K-9 handler" (Behrens Affirm, ¶ 24). Claimants have not disputed this factual assertion.
Although Girard, Gould, and Leckonby commenced these claims before the June 2021 MOU was executed, their filing dates match up almost exactly with the effective date of the MOU's prospective stipend, i.e., October 29, 2020.[FN4]
Girard and Leckonby filed their claims with this Court on that exact date, and Gould did so one day earlier, on October 28, 2020. Significantly, the negotiated MOU permitted only claims arising before the MOU's prospective stipend effective date to proceed. But the claims of Girard, Gould, and Leckonby each maintained that defendant's FLSA violations were ongoing and sought continuing damages, including for the period on or after October 29, 2020, which was covered by the MOU's prospective stipend (see Girard Claim, ¶¶ 2, 4, 6; Gould Claim, ¶¶ 1, 3, 5; Leckonby Claim, ¶¶ 2, 4, 6; see also Cls' Mems of Law in Opp to Def's Cross-Mots to Dismiss [5-24-24], at 8).
Contrary to claimants' argument, the MOU's import is not limited to the amount of damages or whether an offset is appropriate. Rather, the MOU's terms are critical to determining the question of liability, namely, whether defendant violated the FLSA at all during the MOU's prospective period. This is because, in certain circumstances, "the FLSA permits reasonable agreements fixing the amount of compensation" (Brock, 236 F3d at 795; see Tennessee Coal, 321 US at 603). One such scenario exists when—as in these cases—precisely accurate "computation of work hours . . . is difficult or impossible" (Tennessee Coal, 321 US at 603; see Brock, 236 F3d at 801, 805). Thus, employers and employees are permitted to "resolve whether certain activity is 'work' through a collective bargaining agreement, as long as the agreement comports with the FLSA" (Brock, 236 F3d at 801 [internal quotation marks omitted]). Given "the difficulty in determining the exact hours worked in circumstances where unsupervised employees can divide their time between 'work' and personal pursuits, 'any reasonable agreement of the parties which takes into [consideration] all of the pertinent facts will be accepted' " (id. at 805, quoting 29 CFR 785.23).
Recognizing the complexities involved in cases involving K-9 handlers in particular, federal courts have encouraged such agreements in this context based on the existence of difficult factual questions as well as "sound policy considerations"—including the potential that governmental agencies could be forced to eliminate valuable K-9 units due to unanticipated and exorbitant overtime claim costs (id. at 805 [citing Holzapfel, 145 F3d at 527, and noting that the Second Circuit viewed joint "agreements as the best solution to the overtime problem" presented in such cases]; see id. at 805 n 5). The Sixth Circuit in Brock took note of these concerns and explained that the "indeterminate nature" of a K-9 handler's at-home tasks "makes them exactly the sort of work as to which it makes sense for the parties to come to an agreement, to eliminate [*9]complicated, repetitious, and hard-to-resolve disputes about exactly how much time it took to take care of the dogs each day" (id. at 805 [internal quotation marks omitted]). This is especially true given the difficulty in "sorting out how much of the time spent feeding, grooming, exercising, and playing with the dogs was expended necessarily and primarily for the benefit of the employer" (id.). As Brock further explained, ascertaining whether a particular agreement "falls within a broad zone of reasonableness" requires "consider[ation] of its terms and all of the facts and circumstances of the parties' relationship" (id. at 806; see id. at 807). Notably, the agreement found reasonable in Brock is similar to the parties' MOU here, including its provision of overtime compensation of four hours every two weeks (two hours less than that provided in the MOU), as well as dog food and veterinary care payments by the municipality, among other things (see id. at 806).
Indeed, the MOU at issue here appears to have been precipitated by the very disputes raised in these claims, at least in part. As noted, Girard, Gould, and Leckonby seek continuing damages for alleged FLSA violations that occurred during the time governed by the MOU's prospective terms. These claimants also challenge the reasonableness of the MOU's stipend, arguing that the agreed-upon compensation "defies logic and math" because they worked many hours more than accounted for by the stipend (Cls' Mems of Law in Opp to Def's Cross-Mots to Dismiss, at 8). However, the reasonableness of the MOU's terms cannot be determined on the record made by the parties on these motions because their submissions fail fully to address the entirety of the terms or the considerations underlying the agreement (see Brock, 236 F3d at 808). Moreover, as the Brock Court noted, "[t]he actual amount of time spent in FLSA 'work' " by K-9 handlers, even if "reliably ascertained," is not dispositive of an agreement's reasonableness (id. at 807). Rather, that amount of time "is a reference point for a range of reasonable agreements, a range that is widened by a variety of non-monetary costs and benefits;" and the fact that an agreement "included a relatively small amount of paid time does not, by itself, render the agreement unreasonable" (id.). This disputed question of material fact thus requires a trial.
An additional question of fact exists concerning whether the MOU was in fact renewed or extended by the parties' mutual agreement after its initial contemplated expiration date of March 31, 2023. Whether it was extended and the reasonableness of any such further agreement goes to the heart of defendant's liability for the alleged FLSA violations under claimants' continuing damages theory. Given these significant fact questions, Girard, Gould, and Leckonby are not entitled to partial summary judgment as to liability. However, the Court notes that if claimants received the benefit of the bargain entered into by their union representatives on behalf of its members, and the MOU is found to be reasonable—at least prospectively from its effective date with respect to any time it has been in force—then judgment would be warranted in favor of defendant to that extent (see Matter of Plummer v Klepak, 48 NY2d 486, 489 [1979] ["Petitioner, having designated the union as his collective bargaining agent, is bound by the terms of the agreement negotiated for and made on his behalf"], cert denied 445 US 952 [1980]; see also Brock, 236 F3d at 797 n 2, 808).
With respect to those portions of the claims that relate to the work performed by claimants before October 29, 2020, triable issues of fact also exist regarding the amount of compensable time Girard, Gould, and Leckonby spent caring for their dogs during any portion of that period (see Holzapfel, 145 F3d at 522; see also Dragone v Bob Bruno Excavating, Inc., 45 AD3d 1238, 1240 [3d Dept 2007] [denying the plaintiff's motion for partial summary judgment in FLSA case given issue of fact on the "amount of (the) plaintiff's hours"]). Indeed, claimants [*10]are entitled to compensation only for "time spent . . . actively caring for their dogs" (Reich, 45 F3d at 648 [emphasis in original]), and they have not demonstrated precisely "what activities" they "performed and how much time they spent on those activities" (Albanese v Bergen County, New Jersey, 991 F Supp 410, 420 [D NJ 1998]).
Given the difficult factual and procedural issues that remain, and the policy favoring alternative dispute resolution (ADR) (see Rules of Chief Admr of Cts [22 NYCRR] § 160.2 [a] [1]), as well as the parties' unsuccessful prior attempts to resolve these claims through private settlement discussions, the claims of Girard, Gould, and Leckonby are referred to ADR and the parties shall participate in a Court-facilitated process. In the event a settlement is not ultimately reached following the mandatory ADR process, a trial concerning the claims of Girard, Gould, and Leckonby will be scheduled as soon as practicable.
CONCLUSION
Based on the foregoing, it is hereby
ORDERED, that the motions of Girard (M-99255), Gould (M-99258), Leckonby (M-99257), and Rowley (M-99256) for partial summary judgment as to liability are DENIED; it is further
ORDERED, that defendant's cross-motion (CM-100774) to dismiss Rowley's claim is GRANTED and Claim No. 135538 is DISMISSED in its entirety; it is further
ORDERED, that defendant's cross-motions to dismiss the claims of Girard (CM-100773), Gould (CM-100771), and Leckonby (CM-100772) are DENIED; and it is further
ORDERED, that the claims of Girard (Claim No. 135540), Gould (Claim No. 135530), and Leckonby (Claim No. 135541) are referred to ADR.
July 11, 2025
Albany, New York
ZAINAB A. CHAUDHRY
Judge of the Court of Claims
Papers Considered:
Claim No. 135530 (Gregory Gould)
1. Claim No. 135530, filed October 28, 2020;
2. Amended Verified Answer, filed December 16, 2020;
3. Notice of Motion (M-99258), and supporting papers and exhibits, filed March 28, 2023;
4. Notice of Cross-Motion (CM-100771), and supporting papers and exhibits, filed April 19, 2024;
5. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Cross-Motion to Dismiss, filed May 24, 2024;
6. Memorandum of Law in Opposition to Defendant's Cross-Motion to Dismiss, filed May 24, 2024;
7. Affirmation of Melanie Lazarus, Esq., in Reply, filed May 25, 2024;
8. Reply Memorandum of Law in Further Support of Claimant's Motion for Partial Summary Judgment on the Issue of Liability, filed May 25, 2024; and
9. Defendant's Reply in Further Support of Cross-Motion to Dismiss, filed June 7, 2024.
Claim No. 135538 (Brook Rowley)
1. Claim No. 135538, filed October 29, 2020;
2. Amended Verified Answer, filed December 22, 2020;
3. Notice of Motion (M-99256), and supporting papers and exhibits, filed March 28, 2023;
4. Notice of Cross-Motion (CM-100774), and supporting papers and exhibits, filed April 19, 2024;
5. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Cross-Motion to Dismiss, filed May 25, 2024;
6. Memorandum of Law in Opposition to Defendant's Cross-Motion to Dismiss, filed May 25, 2024;
7. Affirmation of Melanie Lazarus, Esq., in Reply, filed May 25, 2024;
8. Reply Memorandum of Law in Further Support of Claimant's Motion for Partial Summary Judgment on the Issue of Liability, filed May 25, 2024; and
9. Defendant's Reply in Further Support of Cross-Motion to Dismiss, filed June 7, 2024.
Claim No. 135540 (Brian Girard)
1. Claim No. 135540, filed October 29, 2020;
2. Amended Verified Answer, filed December 16, 2020;
3. Notice of Motion (M-99255), and supporting papers and exhibits, filed March 28, 2023;
4. Notice of Cross-Motion (CM-100773), and supporting papers and exhibits, filed April 19, 2024;
5. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Cross-Motion to Dismiss, filed May 25, 2024;
6. Memorandum of Law in Opposition to Defendant's Cross-Motion to Dismiss, filed May 25, 2024;
7. Affirmation of Melanie Lazarus, Esq., in Reply, filed May 25, 2024;
8. Reply Memorandum of Law in Further Support of Claimant's Motion for Partial Summary Judgment on the Issue of Liability, filed May 25, 2024; and
9. Defendant's Reply in Further Support of Cross-Motion to Dismiss, filed June 7, 2024.
Claim No. 135541 (Adam Leckonby)
1. Claim No. 135541, filed October 29, 2020;
2. Verified Answer, filed December 16, 2020;
3. Notice of Motion (M-99257), and supporting papers and exhibits, filed March 28, 2023;
4. Notice of Cross-Motion (CM-100772), and supporting papers and exhibits, filed April 19, 2024;
5. Affirmation of Melanie Lazarus, Esq., in Opposition to Defendant's Cross-Motion to Dismiss, filed May 24, 2024;
6. Memorandum of Law in Opposition to Defendant's Cross-Motion to Dismiss, filed May 24, 2024;
7. Affirmation of Melanie Lazarus, Esq., in Reply, filed May 25, 2024;
8. Reply Memorandum of Law in Further Support of Claimant's Motion for Partial Summary Judgment on the Issue of Liability, filed May 25, 2024; and
9. Defendant's Reply in Further Support of Cross-Motion to Dismiss, filed June 7, 2024.

Footnotes

Footnote 1:The caption in each claim has been amended sua sponte to reflect the only properly named defendant.

Footnote 2:In its answers to each of these claims, defendant cited CCA § 10 (4) and pleaded that claimants failed to file their claims within six months of accrual. However, unlike with the three other related claims of former DHSES K-9 handlers seeking similar relief (see Johnson v State of New York, Ct Cl, July 11, 2025, Chaudhry, J., Claim No. 135537 [decided herewith]), defendant inexplicably failed to argue timeliness as a ground for dismissal of any portion of these four claims in its cross-motions to dismiss. Thus, the Court makes no determination as to the timeliness of these four claims or any part thereof—or the State's apparent ability to raise the issue in future filings (see CCA § 11 [c]; Viscuso v State of New York, 238 AD3d 1402, 1404-1405 [3d Dept 2025]).

Footnote 3:Contrary to claimants' assertion that defendant's cross-motions should be considered untimely motions for summary judgment, defendant's cross-motions are properly made under CPLR 3211 (e). Among other things, that provision permits motions to dismiss on the ground of lack of subject matter jurisdiction to be made at any time, even after answering (see CPLR 3211 [e]; Carpenter v Plattsburgh Wholesale Homes, Inc., 83 AD3d 1175, 1177 n 1 [3d Dept 2011]; see also Financial Indus. Regulatory Auth., Inc. v Fiero, 10 NY3d 12, 17 [2008] [holding that lack of subject matter jurisdiction defense may be raised at any time in the litigation]).

Footnote 4:Such overlap does not appear to be a coincidence, but rather, appears to be intentional on the part of the negotiating parties to the MOU.